BI GO MARKETS, INC., and Wetterau
Incorporated, Respondents,

v.

Kenneth D. MORTON, Assessor for
St. Louis County, Missouri, et
al., Appellants.

No. 74711.

Supreme Court of Missouri,
En Banc.

Dec. 18, 1992.

John A. Ross, Paula J. Lemerman, Clayton, for appellants.

Juan D. Keller, Mark B. Leadlove, St. Louis, for respondents.

COVINGTON, Judge.

Kenneth Morton, assessor for St. Louis County, and others, appeal from the trial court's grant of a summary judgment in favor of Bi Go Markets, Inc., and Wetterau, Incorporated. At issue is whether Bi Go and Wetterau owe 1991 *ad valorem* personal property tax in St. Louis County on an aircraft owned by Bi Go and leased by it to Wetterau. The judgment is reversed.

Bi Go, a New Hampshire corporation and subsidiary of Wetterau, having its principal place of business in New Hampshire, is the owner and lessor of an Avions Marcel Dessault Falcon 900 jet aircraft. Bi Go leases the aircraft to Wetterau. The aircraft is regularly kept, hangared, and serviced at Lambert Field in St. Louis County. The flight logs show that from July of 1990, to May of 1991, the aircraft spent two hundred fifty-five of three hundred nine nights at the St. Louis airport, with the remainder of time being spent in fourteen other states. The aircraft made thirteen stops in New Hampshire, of a total of over six hundred stops, and was present overnight in that state three times. On April 1, 1991, Bi Go registered the aircraft with the State of New Hampshire, as required by New Hampshire law, and paid an annual fee in the sum of $57,230.

On May 16, 1991, Bi Go and Wetterau received notice of assessment of the aircraft for 1991 *ad valorem* personal property tax in St. Louis County. Bi Go and Wetterau appealed to the Board of Equalization of St. Louis County contending the aircraft was not subject to taxation in St. Louis County. The Board denied the appeal after which Bi Go and Wetterau appealed to the Circuit Court of St. Louis County.

Appellants and respondents filed motions for summary judgment. Bi Go and Wetterau contended that St. Louis County is constitutionally prohibited from assessing an unapportioned *ad valorem* personal property tax against the aircraft. Bi Go and Wetterau acknowledged that St. Louis County may have the right to assess an apportioned *ad valorem* personal property tax against the aircraft; they contended, however, that the absence of statutory authority for the county to apportion prohibits it from doing so. The trial court granted Bi Go and Wetterau's motion and ordered the assessor to exempt the aircraft from St. Louis County tax rolls. Bi Go and Wetterau then paid the tax under protest.

Appellants contend the circuit court erred in granting summary judgment because the tax situs of the aircraft is St. Louis County and, therefore, §§ 137.075, 137.095, RSMo 1986, require Bi Go and Wetterau to account for property taxes on the aircraft in this state. Appellants further contend that Missouri is the sole taxable situs for the aircraft; therefore, apportionment is not required. Even if apportionment is constitutionally required, appellants further assert, the fact that there is no statutory procedure by which an apportionment may be made does not defeat St. Louis County's ability to impose an apportioned tax.

The present case involves principles of interstate commerce and the due process clause of the Fourteenth Amendment. If two or more states or subdivisions of the states have the power to tax the aircraft, the commerce clause requires the taxing authorities to apportion taxes in a nondiscriminatory manner. *Central R.R. v. Pennsylvania*, 370 U.S. 607, 613, 82 S.Ct. 1297, 1302, 8 L.Ed.2d 720 (1962); *Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment*, 347 U.S. 590, 598, 74 S.Ct. 757, 762, 98 L.Ed. 967 (1954); *Complete Auto Transit v. Brady*, 430 U.S. 274, 278, 287, 97 S.Ct. 1076, 1078, 1083, 51 L.Ed.2d 326 (1977); *Quill Corp. v. North Dakota*, — U.S. —, —, —, 112 S.Ct. 1904, 1912, 119 L.Ed.2d 91 (1992). The taxpayer has the

burden of establishing multiple jurisdictions having the ability to tax. *Central R.R.*, 370 U.S. at 613,. 82 S.Ct. at 1302.

■ St. Louis County has a right to levy an *ad valorem* property tax on the aircraft. § 137.095; *Buchanan County v. State Tax Comm'n*, 407 S.W.2d 910, 914 (Mo.1966). The question is whether the County's tax must be apportioned. Determination of whether the County can levy an unapportioned tax on the aircraft is first dependent upon whether New Hampshire is constitutionally able to levy a property tax on the aircraft.[1]

The law of authority to tax mobile property used in interstate commerce has developed without clear direction and guidance. By the ancient fiction of *mobilia sequuntur personam* only the domicile of the owner could properly levy personal property taxes. 71 Am.Jur.2d *State and Local Taxation*, § 655 (1973); *see also State ex rel. American Automobile Ins. Co. v. Gehner*, 320 Mo. 702, 712, 8 S.W.2d 1057, 1059–60 (1928). As personal property became more mobile, the ancient fiction gave way to the rule that tangible personal property is to be taxed only where the property has a physical situs. 71 Am.Jur.2d *State and Local Taxation*, § 659 (1973).

■ With the gradual decline of the *mobilia sequuntur personam* doctrine in the beginning of the twentieth century, the United States Supreme Court began to restrict the power of states to tax mobile goods used in interstate commerce. A review of the United States Supreme Court decisions indicates that constitutional concerns of interstate commerce and due process limit the extent to which any state may tax tangible personal property. In *Union Refrigerator Transit v. Kentucky*, 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905), the state of Kentucky, the domicile of the property owner, assessed box cars leased to others permanently situated in other states. The Court held that taxation by the domicile violated the due process clause when the property was permanently located in a nondomiciliary state because the taxpayer was required to pay for state services it was never afforded, taxation by the domicile under the circumstances partook "rather of the nature of an extortion than a tax." *Id.* at 202, 26 S.Ct. at 37.

In *Johnson Oil Refining Co. v. Oklahoma*, 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933), the Court further defined the ability of domiciliary and nondomiciliary states to tax property used in interstate commerce. In *Johnson Oil*, an Illinois corporation operated an oil refinery in Oklahoma. *Id.* at 159, 54 S.Ct. at 152. The refinery had several railroad tankers used almost exclusively in interstate commerce but which where loaded out of and returned to Oklahoma on a routine basis. *Id.* at 160, 54 S.Ct. at 153. The tankers visited Illinois only on a very infrequent basis. *Id.* The Court found the domiciliary state, Illinois, had lost its jurisdiction to tax the property because the property had an actual situs elsewhere. *Id.* at 161, 54 S.Ct. at 153. To determine whether the tankers had a tax situs in Oklahoma the Court looked to whether the property was habitually or continuously employed within the state. *Id.* at 162, 54 S.Ct. at 153. Although the Court found that Oklahoma was a tax situs, it allowed the state to tax only on an apportioned basis because the tankers were habitually and continuously employed in other states as well. *Id.* at 163, 54 S.Ct. at 154.

In *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944), the Court refused to extend the *Johnson Oil* test for determining tax situs to commercial airlines. Northwest Airlines was domiciled in and had its principal place

---

1. Appellants contend the annual fee paid by Bi Go to New Hampshire is not an *ad valorem* property tax and, because no other state currently imposes an *ad valorem* tax on the aircraft, Missouri is not required to apportion its tax. Respondent contends that the New Hampshire tax is in the nature of a property tax. The nature of the tax is of no consequence in the present case. The question for the purpose of this case is simply whether another state has the constitutional authority to tax, irrespective of whether a property tax has actually been imposed. *See Peabody Coal Co. v. State Tax Comm'n*, 731 S.W.2d 837, 838 (Mo. banc), *cert. denied*, 484 U.S. 960, 108 S.Ct. 446, 98 L.Ed.2d 386 (1987).

of business in Minnesota. *Id.* at 293, 64 S.Ct. at 951. The airlines operated aircraft in Illinois, Minnesota, North Dakota, Montana, Oregon, Wisconsin, and Washington. *Id.* The Court refused to consider factors such as stopovers, runs, location of flying crew bases, and the location of flight facilities in determining whether the aircraft had established tax situs elsewhere. *Id.* Rather, the Court held that no nondomiciliary state had provided continuous protection or benefits throughout the year to the airlines so that Minnesota, the domiciliary state, retained full power to tax. *Id.* at 297, 300, 64 S.Ct. at 953, 954.

In *Braniff Airways, Inc. v. Nebraska State Board of Equalization and Assessment,* 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954), the Court assessed the plurality holding in *Northwest Airlines* and found a nondomiciliary state could establish a tax situs if the airline made regularly scheduled flights into the state. The Court rejected the argument that the commerce clause immunized interstate instrumentalities from all state taxation, but found that commerce may be required to pay a nondiscriminatory or apportioned share of the tax burden. *Id.* at 597–98, 74 S.Ct. at 761–62. The Court also rejected the argument that the due process clause prohibited the airline from paying tax in the nondomiciliary state. *Id.* at 598–602, 74 S.Ct. at 762–765. Under due process considerations the only concern is "whether the tax in practical operation has relation to the opportunities, benefits or protection conferred by or afforded by the taxing state." *Id.* at 600, 74 S.Ct. at 763.

In *Central Railroad Co. v. Pennsylvania,* 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962), the Court again addressed the question of whether taxation by a nondomiciliary state violated the commerce clause. The Court held that it is only multiple unapportioned taxation of interstate operations that offends the commerce clause. *Id.* at 612, 82 S.Ct. at 1301.

In sum, the United States Supreme Court decisions reflect that the due process clause is satisfied when tangible personal property is taxed according to its "tax si-

tus," i.e., the place the property is located, and commerce clause concerns are satisfied if the property tax is apportioned when multiple states have a tax situs. *See Standard Oil v. Peck,* 342 U.S. 382, 384–85, 72 S.Ct. 309, 309–11, 96 L.Ed. 427 (1952).

■ Respondents argue that St. Louis County must apportion its tax because New Hampshire, as domicile, retains the power to tax the aircraft. Respondents' argument rests on the premise that the aircraft is not "permanently located" outside of New Hampshire. *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. at 206, 26 S.Ct. at 38. Respondents read "permanently located" to mean "continuously throughout the year, not a fraction thereof, whether weeks or days," relying on *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. at 298, 64 S.Ct. at 953.

Respondents read *Northwest Airlines* too narrowly. *Northwest Airlines* does not authorize a domicile to levy an *ad valorem* property tax if the property enters the domicile for a period of time, no matter how brief. Furthermore, the inquiry does not end with *Northwest Airlines.* *Northwest Airlines,* a plurality opinion, is followed by cases interpreting *Northwest Airlines* to stand for the proposition that the domiciliary retains the right to tax personal property not located in the state only when it has not been shown that the property acquired a tax situs elsewhere. *Braniff Airways,* 347 U.S. at 601, 74 S.Ct. at 764. The domicile retains the power to tax when the property does not have a physical situs elsewhere because the property would otherwise escape taxation altogether. If the property has insufficient contacts with any other state to establish a tax situs, it is "appropriate to assume the domicile is the only State affording the opportunities, benefits, or protection which due process demands." *Central R.R.,* 370 U.S. at 612, 82 S.Ct. at 1302. *See Pullman's Palace–Car Co. v. Pennsylvania,* 141 U.S. 18, 29, 11 S.Ct. 876, 880, 35 L.Ed. 613 (1891). When personal property has acquired a tax situs elsewhere, the domicile loses its jurisdiction to tax unless the domicile can establish the property is deriving substantial "opportuni-

ties, benefits, and protections" from the state by habitual or continuous use within the state.[2] *Northwest Airlines*, 322 U.S. at 312, 313, 64 S.Ct. at 960, 961 (Stone, J., dissenting).

This Court returns to the specific question presented here—whether St. Louis County can levy an unapportioned tax on the aircraft. This question, in turn, depends upon whether New Hampshire is authorized to levy a property tax on the aircraft. Being the domicile, without more, does not establish New Hampshire as a tax situs. Resolution of the question is made by determining whether the property is deriving substantial "opportunities, benefits and protections" from New Hampshire by habitual or continuous use within New Hampshire. Thus, the situs issue as to New Hampshire devolves into the question of whether the aircraft's thirteen stops in New Hampshire, of over six hundred flights, and being present three of three hundred nine nights within the state are sufficient to establish New Hampshire's power to tax. The basis of the jurisdiction is the use or enjoyment of the property within the state.

While there is no clear demarcation of "habitual or continuous" nature of the use, the facts of other cases give guidance. Operating on fixed and regular routes may establish the power to tax. *Central R.R.*, 370 U.S. at 614–15, 82 S.Ct. at 1302–03. Regular contact is sufficient to establish a state's power to tax commercial aircraft. In *Braniff Airways*, 347 U.S. at 600–01, 74 S.Ct. at 763–64, the State of Nebraska was permitted to levy an apportioned *ad valorem* tax on the fleet of an interstate air carrier, which operated eighteen daily scheduled flights to and from points in Nebraska and made on average eighteen stops per day in Nebraska. Although the present case does not involve an aircraft operated by a common carrier, *Central R.R.* and *Braniff Airways* are nevertheless instructive for the due process analysis.

This Court's decision in *Peabody Coal Co. v. State Tax Comm'n*, 731 S.W.2d 837 (Mo. banc), *cert. denied*, 484 U.S. 960, 108 S.Ct. 446, 98 L.Ed.2d 386 (1987), is also instructive. The taxpayer in *Peabody* was a Delaware corporation with its principal office and place of business in the City of St. Louis. *Id.* at 838. It owned two aircraft used in the course of its business to transport persons and property as the needs of the business required. *Id.* The taxing authority of St. Louis County, where the aircraft were hangared and spent approximately seventy-five percent of their ground time, sought to impose *ad valorem* taxes on the full assessed valuation of both aircraft. *Id.* This Court found that an aircraft situated in Missouri failed to establish a tax situs in Indiana, where it made 31.8% of its landings. *Id.* at 839. The taxpayer failed to meet its burden of showing a continuous presence or "actual situs" in Indiana so as to limit the exclusive taxing authority of Missouri. *Id.*

In the present case the taxpayers' burden is not met. Under the undisputed facts, the aircraft made only thirteen stops in New Hampshire during the relevant period and the aircraft was present in New Hampshire overnight on only three occasions. The record is devoid of any other facts to show that the aircraft maintained a habitual presence or continuous use or enjoyment of the property within New Hampshire. The judgment must be reversed.

There is an additional basis for decision, also requiring reversal as to Wetterau. In this case, a Missouri corporation, Wetterau, is leasing an airplane from a New Hampshire corporation. The airplane is based in Missouri.

By strict stare decisis, there is no need to apportion a personal property tax on a Missouri corporation, regarding property not permanently outside the state. *Peabody Coal Co. v. State Tax Comm'n,*

---

2. "[E]xcept in the case of tangibles which have nowhere acquired a tax situs based upon physical presence, and for that reason remain taxable at the domicile even if never present there, the state's power to tax chattels depends on their physical presence and is neither added to nor subtracted from because the taxing state may or may not happen to be the state of the owner's domicile." *Northwest Airlines*, 322 U.S. at 312, 313, 64 S.Ct. at 960, 961.

731 S.W.2d 837 (Mo. banc), *cert. denied,* 484 U.S. 960, 108 S.Ct. 446, 98 L.Ed.2d 386 (1987).

In Missouri, every corporation "owning" or "holding" tangible personal property is liable for tax, which may be assessed against either or both. §§ 137.075, 137.-095, RSMo 1986; *State ex rel. Rudder v. Haphe,* 326 Mo. 460, 31 S.W.2d 788, 791 (1930); *William A. Straub, Inc. v. City of St. Louis,* 506 S.W.2d 377, 379 (Mo.1974).

In this case, Missouri is taxing the holder of the property, a Missouri corporation, which actually pays the tax. For all the record shows, the Missouri taxpayer used the plane to travel to New Hampshire "without any regularity and solely in accordance with the requirement of its business." *Peabody Coal Co.,* 731 S.W.2d at 839. "Property does not become subject to multiple taxation simply because it is often taken across a state line." *Id.* "To acquire an actual situs in another state [New Hampshire] so as to limit the exclusive taxing authority of the home state [Missouri] there must be continuous presence in another state [New Hampshire] which thereby supplants the home state [Missouri] and acquires the taxing power over personalty that has become a permanent part of the foreign state [New Hampshire]." *Id.* citing *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 296, 64 S.Ct. 950, 952, 88 L.Ed. 1283 (1944) (brackets added).

The taxpayer Wetterau has not met its burden of showing a "continuous presence" or "actual situs" in New Hampshire. *Peabody Coal Co.,* 731 S.W.2d at 839.

For the reasons above stated, the judgment is reversed.

PRICE and LIMBAUGH, JJ., concur.

BENTON, J., concurs in separate opinion filed.

HOLSTEIN, J., concurs in opinion of BENTON, J.

ROBERTSON, C.J., dissents in separate opinion filed.

THOMAS, J., concurs in opinion of ROBERTSON, C.J.

BENTON, Judge, concurring.

I concur fully in the thorough majority opinion but write separately to emphasize the practicalities of this case.

"[A] four-part test ... continues to govern the validity of state taxes under the Commerce Clause." *Quill Corp. v. North Dakota,* —— U.S. ——, ——, 112 S.Ct. 1904, 1912, 119 L.Ed.2d 91 (1992): (1) Is there sufficient connection to the state to justify the tax? (2) Is the tax fairly related to benefits provided the taxpayer? (3) Does the tax discriminate against interstate commerce? and, (4) Is the tax unfairly apportioned? *Complete Auto Transit v. Brady,* 430 U.S. 274, 278, 287, 97 S.Ct. 1076, 1078, 1083, 51 L.Ed.2d 326 (1977). *"Complete Auto* emphasized the importance of the looking past 'the formal language of the tax statute [to] its practical effect.'" *Quill Corp.,* —— U.S. at ——, 112 S.Ct. at 1912, quoting *Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079. *Complete Auto* requires a "practical analysis" of the "economic realities." *Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079.

The taxpayer here focuses mainly on the fourth prong, apportionment. The taxpayer assumes that to satisfy *Complete Auto,* the apportionment must be conscious and intentional. *Complete Auto* imposes no such express requirement but looks to the result whether "the tax is unfairly apportioned." *Complete Auto,* 430 U.S. at 278, 97 S.Ct. at 1078. As demonstrated by the raw numbers in this case, a fair apportionment did occur. The taxpayer can expect no more.

In this case, the "operating fee" paid New Hampshire is $57,230 for 1991. In contrast, Missouri's personal property tax is about $300,000 for 1991—approximately five times the New Hampshire fee. According to the flight logs, the aircraft spent five times as many nights in Missouri as in all other states. Missouri's personal property tax thus achieves a fair apportionment.

This "practical analysis" of the "economic realities" is particularly appropriate because the New Hampshire fee and Missouri

tax are not comparable, except as to "bottom-line" amount. The New Hampshire operating fee is, during the first 10 years, (mostly) a decreasing percentage of "manufacturer's list price" and a flat fee thereafter. *N.H.R.S.A. § 422.37.* Enforcement is by criminal penalties. *N.H.R.S.A. §§ 422.-34, 422.35.* Revenue goes to a specific "Aeronautical Fund," to pay for airports and airport bonds. *N.H.R.S.A. § 422.42.*

The Missouri tax is a traditional ad valorem tax, with the traditional valuation, reduced to assessment, multiplied by a combined tax rate of local governments. *§§ 137.075–137.420 RSMo 1986.* Enforcement is against the property, as well as against the person. *§§ 139.120, 140.730 RSMo 1986.* Revenue goes to the general budgets of local governments.

The facts of this case, therefore, accord with the standard that a challenged tax shall be compared only to identical taxes in other states. *Goldberg v. Sweet,* 488 U.S. 252, 261, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989); *cf. Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 278, 98 S.Ct. 2340, 2347, 57 L.Ed.2d 197 (1978) (approving result of apportionment of overlapping taxes). By a practical analysis, the Missouri personal property tax in this case does not violate the Commerce Clause.

ROBERTSON, Chief Justice, dissenting.

Respondent Bi–Go Markets, Inc., is a New Hampshire corporation and a subsidiary of Wetterau Incorporated. Bi–Go leases a corporate jet to Wetterau, which Wetterau bases in St. Louis County, Missouri. This case asks us to determine whether a non-domiciliary taxing authority (here, St. Louis County, Missouri) may levy an unapportioned ad valorem tax on property used in interstate commerce (here, Bi–Go's corporate jet based in St. Louis County). The precise issue in this case has escaped the dispositive hand of the United States Supreme Court.

The majority opinion concludes that St. Louis County may levy an unapportioned ad valorem tax on the airplane, reasoning that the tax is permissible because no other state has been shown to have the power to tax the airplane. In my opinion, the Commerce Clause of the United States Constitution does not permit St. Louis County to levy an unapportioned tax in this case. For the reasons expressed, I respectfully dissent.

## I.

A taxpayer may challenge a state's efforts to levy an ad valorem tax on two constitutional grounds. First, the Due Process Clause of the Fourteenth Amendment prohibits a state from taxing property with which it has no significant contacts. Thus, property that is permanently located outside the state, even though it belongs to a domiciliary of the state, may not be taxed by the domiciliary state. *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905) (due process prevents *domiciliary* state from taxing property located *permanently outside* the state); *Old Dominion Steamship Co. v. Virginia,* 198 U.S. 299, 25 S.Ct. 686, 49 L.Ed. 1059 (1904) (*non-domiciliary* state may tax property located *permanently within* its borders on an unapportioned basis). Although Bi–Go claims an unapportioned Missouri tax would violate due process, Missouri has sufficient contacts with this airplane to support the imposition of an ad valorem tax. The extent of Missouri's power to tax, however, is a Commerce Clause rather than a Due Process Clause concern.

The Commerce Clause forbids a state from levying a tax that either discriminates against interstate commerce or places an undue burden upon interstate commerce. Bi–Go's jet leaves Missouri for other states on nearly a daily basis. It travels, at least sporadically, to New Hampshire, the domicile of its owner. It is used to transport persons and property between and among the several states as the needs of its owners dictate. The plane, it is not disputed, is an instrument of interstate commerce.

There is no claim here that St. Louis County's tax discriminates against interstate commerce. The County seeks to impose a tax at the same rate as that for property involved in purely intrastate com-

merce. Therefore, it remains only to be determined whether the unapportioned tax assessed in this case poses an undue burden on interstate commerce. The majority opinion holds that it does not. With respect, I disagree.

The majority opinion holds that the federal constitution does not require St. Louis County to apportion its tax because the taxpayer has failed to prove "that the aircraft maintained a *habitual presence* or *continuous use or enjoyment* of the property within New Hampshire." Maj.Op. at 920. [Emphasis added.] By borrowing language used to test the taxing authority of non-domiciliary states and applying it to New Hampshire, the domiciliary state in this case, it is apparent that the majority's result is founded on its assumption that the taxing powers of non-domiciliary states are now identical to those of domiciliary states. I believe, however, that a domiciliary state still occupies a unique position with respect to levying taxes on the property of its residents, provided the domiciliary state retains some contact with the taxed property.

No previous case, state or federal, holds that a non-domiciliary state may levy an unapportioned ad valorem tax on an instrument of interstate commerce not located permanently and continuously within its borders. On the other hand, a domiciliary state may levy such a tax on property used in interstate commerce until it is shown that some non-domiciliary state has acquired sufficient contact with the property to levy an apportioned tax. *New York Central & H.R. Co. v. Miller*, 202 U.S. 584, 587, 26 S.Ct. 714, 50 L.Ed. 1155 (1906); *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 299–300, 64 S.Ct. 950, 954–955, 88 L.Ed. 1283 (1944). The majority, by equating the taxing powers of domiciliary and non-domiciliary states, grants Missouri the benefit of the presumption found in *Miller* and *Northwest* despite the fact that Missouri is not the domicile of the plane's owners. The majority does not dispute that if any state in addition to Missouri has the authority to tax this airplane, no matter how small its apportioned share may be, then Missouri must apportion its tax as well. Maj.Op. at 917. The majority holds that, because the aircraft made only eleven stops and three overnight stays in New Hampshire during the ten months under review, New Hampshire has insufficient contacts to support a New Hampshire tax. Maj.Op. at 920. I disagree and would hold that these contacts with New Hampshire, while perhaps insufficient to *create* the power to tax in a state that is not the property owners' domicile, are sufficient for a state to *retain* at least some of the power to tax it had originally as the property owners' domicile.

Indeed, my reading of the cases suggests that, at most, New Hampshire's authority to levy an unapportioned tax as the domiciliary state is defeated only to the extent that Missouri (or some other jurisdiction) can "take" some portion of that authority to tax away. Therefore, I do not believe that Bi–Go is required to show that the contacts with New Hampshire are sufficient to establish it as a taxing situs; Bi–Go's domicile there is enough. The burden on Bi–Go is merely to show that New Hampshire has not lost its power to tax completely; that Missouri has not taken New Hampshire's place as the sole taxing authority. The eleven visits and three overnight stays in New Hampshire are sufficient to allow New Hampshire to maintain some authority to tax and, therefore, Missouri must apportion its tax.

Undoubtedly, there is confusion in the relevant cases. This uncertainty is based on the fact that the cases focus on a particular state, either a domicile or a non-domicile, and its power to tax certain property. The question of a particular state's power to tax certain property as opposed to another state's power has not been directly presented to the Supreme Court. Thus, the cases the majority cites are no more persuasive for its positions than for the conclusion I reach. In any particular case, the analysis proceeds from an initial factual predicate that the state attempting to tax is either the property owner's domicile or not. To reach its result, however, the majority must assume that the distinction between the power of domiciliary and non-domicili-

ary states to levy property taxes is no longer relevant.

The majority opinion first cites *Union Refrigerator Transit Co. v. Kentucky,* 199 U.S. 194, 26 S.Ct. 36, 50 L.Ed. 150 (1905), for the proposition that a domiciliary state may not tax property that is permanently located outside the state. Maj.Op. at 918. *Union Transit* is a due process case. There, a Kentucky county court determined that Kentucky property taxes should apply only to that portion or percentage of Union Transit's rolling stock used in Kentucky. *Id.* at 195, 26 S.Ct. at 36. A Kentucky circuit court affirmed this method of apportionment. The Kentucky Court of Appeals reversed, holding that Kentucky had authority to assess property taxes against the entire fleet because Kentucky, as the domiciliary state, was deemed to be the situs of Union Transit's personal property wherever it may be situated. *Id.* The United States Supreme Court reversed and held that "the cars in question, so far as they were located and employed in other States than Kentucky, were not subject to the taxing power of that Commonwealth." *Id.* at 211, 26 S.Ct. at 41. *Union Transit* thus stands for the proposition that a domiciliary state may levy an unapportioned property tax only insofar as the property is not permanently located outside the domiciliary state. Once property is permanently removed from the jurisdiction, the Due Process Clause prohibits the domiciliary state from taxing that property.

The majority next relies on *Johnson Oil Refining Co. v. Oklahoma,* 290 U.S. 158, 54 S.Ct. 152, 78 L.Ed. 238 (1933), to support the proposition that a domiciliary state may completely lose the power to tax the property of its residents. Maj.Op. at 918. *Johnson Oil,* too, is a due process case. As the majority recounts, *Johnson Oil* states that "the state of domicile has no jurisdiction to tax personal property where its actual situs is in another state." *Johnson Oil,* 290 U.S. at 161, 54 S.Ct. at 153. I do not read the phrase "actual situs" as broadly as the majority, however. Instead, I believe the quoted statement merely recites the rule of *Union Transit:* where property establishes a tax situs *perma-*

*nently* outside a domiciliary state, due process prohibits the domiciliary state from taxing the property.

The Supreme Court's attention in *Johnson,* however, was not on Illinois, the domiciliary state, but on Oklahoma, a non-domiciliary state where the taxed property was habitually, though not continuously, found. *Id.* at 160, 54 S.Ct. at 153. The Court held that "Oklahoma was entitled to tax *its proper share* of the property ... determined by taking the number of cars which on the average were found to be physically present within the state." *Id.* at 163, 54 S.Ct. at 154. [Emphasis added.] By limiting the non-domiciliary state to an apportioned tax, other states (including, presumably, Illinois) could levy taxes according to their contacts.

The majority next considers the two airline cases, *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944), and *Braniff Airways, Inc. v. Nebraska,* 347 U.S. 590, 74 S.Ct. 757, 98 L.Ed. 967 (1954). In *Northwest,* the airline was a domiciliary of Minnesota, which sought to levy an unapportioned tax on the airline's property. The Supreme Court held that a domiciliary state may levy an unapportioned tax on property of its residents until the taxpayer demonstrates that the property is subject to tax in another state. Absent this showing, the domiciliary state may levy against all the taxpayer's property wherever located. *Id.* 322 U.S. at 299–300, 64 S.Ct. at 954–955. This had been the rule since *New York Central & H.R. Co. v. Miller,* 202 U.S. 584, 587, 26 S.Ct. 714, 50 L.Ed. 1155 (1906), and continues to be rule today. *See Central R.R.,* 370 U.S. at 613, 82 S.Ct. at 1302, and *Peabody,* 731 S.W.2d at 838.

In *Braniff,* the airline was an Oklahoma corporation. Nebraska, a non-domiciliary state, attempted to levy a tax on Braniff airplanes landing in Nebraska. The Court permitted Nebraska to levy an apportioned tax on Braniff's planes based, in part, on the number of landings in Nebraska. *Braniff,* therefore, stands as an example, like *Union Transit* and unlike *Northwest* and *Peabody,* where the required showing

that a non-domiciliary state possessed the power to tax was successfully made.

*Braniff* does not discuss the power of Oklahoma, the domiciliary state, to tax. *Union Transit* and *Northwest* make clear, however, that the authority of a domiciliary to tax does not evaporate merely because a non-domiciliary may levy an apportioned tax. Far from depriving the domiciliary state of the authority to tax, the existence of sufficient taxable contacts with another state, at most, requires the domiciliary to apportion its tax. *See also Standard Oil Co. v. Peck*, 342 U.S. 382, 384–85, 72 S.Ct. 309, 309–311, 96 L.Ed. 427 (where property was almost continuously out of the state, domiciliary state may only tax on an apportioned basis). *But see Central Railroad Co. v. Pennsylvania*, 370 U.S. 607, 612, 82 S.Ct. 1297, 1301, 8 L.Ed.2d 720 (1962) (due process does not limit a domiciliary state to an apportioned tax based on the proportion of the time the property spent within the state).

Finally, the majority turns to *Central Railroad Co. v. Pennsylvania*, 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962), for the proposition that "it is only 'multiple taxation of interstate operations' that offends the Commerce Clause." *Central R.R.*, 370 U.S. at 612, 82 S.Ct. at 1301 (citing *Peck*, 342 U.S. at 385, 72 S.Ct. at 310). The sentence immediately preceding this quote reads, "a [domiciliary] State casts no forbidden burden upon interstate commerce by subjecting its own corporations, though they be engaged in interstate transport, to nondiscriminatory property taxes." *Id.* In fact, the Supreme Court goes on to say, in language following that cited by the majority opinion, that "the Due Process Clause [does not] confine the domiciliary State's taxing power to such proportion of the value of the property being taxed as is equal to the fraction of the tax year which the property spends within the State's borders. *Union Transit* held only that the Due Process Clause prohibited ad valorem taxation by the owner's domicile of tangible personal property *permanently*

located in some other State." *Id.* [Emphasis in original, citations omitted.]

The majority opinion also cites as "instructive," *Peabody Coal Co. v. State Tax Comm'n*, 731 S.W.2d 837 (Mo. banc), *cert. denied*, 484 U.S. 960, 108 S.Ct. 446, 98 L.Ed.2d 386 (1987). Maj.Op. at 920. Yet, *Peabody* involved a Missouri corporation. *Peabody* is thus of little assistance as *Peabody's* analysis proceeds from a factual predicate not found in this case. The airplanes being taxed in that case were based in Missouri, the domiciliary state, but traveled extensively in interstate commerce. This Court upheld an unapportioned Missouri tax because, while the record plainly showed the planes were out of Missouri for a substantial percentage of the time, the taxpayer had failed to demonstrate that any other state had acquired the authority to tax the property. Thus, this Court applied the presumption afforded domiciliary states by *Central R.R.*, 370 U.S. at 611–12, 82 S.Ct. at 1301–02, *Northwest*, 322 U.S. at 294, 64 S.Ct. at 951, and *Miller*, 202 U.S. at 587, 26 S.Ct. 714. It appears that the majority has, in the present case, given Missouri the benefit of this same presumption even though she is not, in this case, the domicile of Bi–Go.

The central issue in this case is whether any state other than Missouri has the authority to tax Bi-Go's jet. If so, Missouri must apportion. If not, Missouri may tax the entire value of the jet. Bi-Go bears the burden of establishing the existence of another tax situs. The majority opinion holds Respondents have failed in this burden because eleven landings and three overnight visits in New Hampshire are insufficient to *establish* a tax situs there. I believe, however, that because New Hampshire is respondents' domicile the question is not whether these contacts *establish* the authority to tax there but rather whether the contacts are sufficient to *retain* at least some part of its originally plenary power to tax the property. Because I believe that these eleven landings and three overnight visits are a sufficient factual predicate for New Hampshire to retain authority to tax, I believe St. Louis County

must apportion its tax.[1]

For this reason I believe the majority's reliance on Chief Justice Stone's dissent in *Northwest* is incorrect. *See* Maj.Op. at 920 n. 2. Justice Frankfurter's opinion for the plurality in that case contains a very different statement.

> The continuous protection by a State other than the domiciliary State—that is, protection throughout the year—has furnished the constitutional basis for tax apportionment in these interstate commerce situations, and it is on that basis that the tax laws have been framed and administered.
>
> The taxing power of the domiciliary State has a very different basis. It has the power to tax because it is the State of domicile and no other State is.... [N]o judicial restriction has been applied against the domiciliary State except when property (or a portion of fungible units) is permanently situated in a State other than the domiciliary State. And permanently means continuously throughout the year, not a fraction thereof, whether days or weeks.

*Northwest*, 322 U.S. at 297–98, 64 S.Ct. at 953. In *Central R.R.*, the "very different basis" of the domiciliary state's power to tax is further explained as not being bound by the commerce clause and only bound by the due process clause to the extent that a state may not tax property permanently located outside its borders. It cannot be said that Bi–Go's jet is permanently outside of New Hampshire. New Hampshire maintains some contact with the property of its resident and must, therefore, retain some portion of its power to tax this property. To the extent of this retained power, at least, Missouri's power to tax the plane is likewise reduced. An apportionment of

value must occur to reflect this reduction in this state's constitutional authority to tax.

## II.

I must also respectfully dissent from the majority's "additional basis" for its reversal as to Wetterau. Maj.Op. at 920–21. The majority contends that *Peabody Coal*, "by strict stare decisis," controls the disposition of Wetterau's appeal. Maj.Op. at 920. *Peabody Coal* holds that Missouri may levy an unapportioned tax on an instrument of interstate commerce when the owner of that property is a domiciliary of this state. *Peabody Coal*, 731 S.W.2d at 839. The taxpayer, in that case, was the owner of the aircraft and was a Missouri corporation. *Id.* at 838.

In the present case, while it is true that Wetterau is a Missouri corporation, Wetterau is not the owner of the jet. Wetterau holds the airplane under a six-year, triple-net lease from Bi–Go. Bi–Go, a New Hampshire domiciliary, is the owner. Sections 137.075 and 137.095, RSMo 1986, may make Wetterau liable for any tax which may otherwise legally be assessed against this plane, but neither those sections nor the domicile of a lessee changes what is, in my view, a constitutional prohibition against an unapportioned tax in this case. *C.f. Union Transit*, 199 U.S. at 195, 26 S.Ct. at 36 (state may tax only on an apportioned basis where owner of property was not a domiciliary of that state, without regard to the fact that the property was, at any one time, in the hands of numerous lessees). It is not the domicile of the taxpayer that drives the constitutional analysis; it is the domicile of the property owner. Any other rule would, in the present case, result in an unapportioned tax being

---

1. Moreover, it is irrelevant whether the amounts charged by New Hampshire are, or should be considered, an ad valorem tax. This is so because the question is not whether a tax has been imposed in another jurisdiction but rather, "whether a state property tax might constitutionally be imposed....' by the several states on an apportioned basis.'" *Central R.R.,* 370 U.S. at 613, 82 S.Ct. at 1302 [citations omitted]; *accord, Braniff,* 347 U.S. at 598, 74 S.Ct. at 762. *See also Peabody Coal,* 731 S.W.2d at 838 ("The

existence in another state of the constitutional *authority* to [tax] is enough to preclude Missouri [, the domiciliary state,] from levying an unapportioned tax."). Therefore, because the issue is solely whether New Hampshire maintains some constitutional authority to tax, Judge Benton's "practical analysis" in which he finds a de facto "fair apportionment" between Missouri's unapportioned ad valorem tax and New Hampshire's user fee is inapposite.

held unconstitutional as against Bi–Go because it poses an undue burden on interstate commerce, but the same tax on the same plane would be held constitutional as against Wetterau. The constitutional law of ad valorem taxes cannot be made to depend on who receives the bill.

New Hampshire is the domiciliary state of the property owner in this case. As such, it stands in a unique constitutional position to levy an ad valorem tax on this plane. This position has not been lost simply because the plane has had limited contacts with New Hampshire or because the plane has been leased to a Missouri domiciliary. Because New Hampshire retains at least some of it authority to tax, Missouri may constitutionally levy only an apportioned tax, regardless of who is to pay that tax.

### III.

Bi–Go maintains that such an apportionment is beyond the power of the St. Louis County. It argues that only the General Assembly has the power under Missouri's constitution to establish the apportionment formula. St. Louis County contends that apportionment is merely a mechanical function. As such, it does not require legislative action.

Article X, Section 1 of the Missouri Constitution provides:

> The taxing power may be exercised by the general assembly for state purposes, and by counties and other political subdivisions under power granted them by the general assembly for county, municipal and other corporate purposes.

St. Louis County has not cited a statute that grants it the authority to apportion a tax on property in interstate commerce. Where the General Assembly has granted that authority, it has done so in recognition of the statewide impact of such an apportionment and has assigned the apportionment task to the State Tax Commission. *See, e.g.,* Section 151.060(3), RSMo 1986 (interstate railroad property to be apportioned); Section 155.040, RSMo 1986 (interstate airline property to be apportioned). Absent statutory authority in St. Louis County to apportion, I would hold that it lacks the authority.

### IV.

Because I believe Missouri may not, consistent with the principles embodied in the federal commerce clause, levy an unapportioned tax on Bi–Go's property, I would hold that Missouri must apportion its tax to fairly reflect the extent of its contacts with the property. Additionally, because the legislature has not established a formula by which this apportionment may be accomplished, St. Louis County is prohibited by Article X, Section 1 of the Missouri Constitution from doing so.

For these reasons, I respectfully dissent.