Ralph L. MARTIN, Public Administrator, Guardian of the Person and Estate of Ora L. Heintzelman, Incompetent, Appellant.

v.

Orlow Glenn NORTON and Lillian Josephine Norton, Respondents.

No. 56358.

Supreme Court of Missouri, Division No. 2.

July 16, 1973.

**166**

Herbert M. Rope, Kansas City, for appellant; Rope, Shanberg & Rope, Kansas City, of counsel.

Donald L. Mason and William S. Lacy, Kansas City, for respondents; Sheridan, Sanders, Carr, White & Mason, Kansas City, of counsel.

STOCKARD, Commissioner.

Ralph L. Martin, public administrator, as guardian of the person and estate of Mrs. Ora L. Heintzelman, an incompetent, brought this suit to set aside a deed executed by his ward on February 18, 1964, whereby she conveyed approximately 120 acres of land to Orlow G. Norton and Lillian J. Norton, husband and wife. The trial court refused to set aside the deed, and the public administrator has appealed. At the time the notice of appeal was filed this court had appellate jurisdiction because title to real estate was involved, and it retains jurisdiction pursuant to Missouri Constitution Art. V, § 31, V.A.M.S.

In 1953 respondents bought a lot from Mr. and Mrs. Heintzelman and built a house on it. Mr. Heintzelman died that year and Mrs. Heintzelman continued to live next door to the respondents. Over the years Mrs. Heintzelman and respondents became very close friends. Respondents visited with her almost every day and they frequently had their meals together. Respondents also did many things for Mrs. Heintzelman such as mowing her lawn, trimming trees, and doing errands for her. When Mrs. Heintzelman quit driving, respondents provided her transportation to wherever she wanted to go. Until incompetency proceedings were started Mrs. Heintzelman lived alone, maintained her household, and took care of her personal affairs.

Mrs. Norton described her relationship with Mrs. Heintzelman as "very close," and it was described by one of the witnesses as a "mother and daughter type of friendship." After Mr. Heintzelman died, respondents prevailed upon Mrs. Heintzelman to join their church, and she thereafter attended regularly with the respondents. Because of their close relationship Mrs. Norton became acquainted with at least some of Mrs. Heintzelman's business affairs, and at times Mrs. Heintzelman confided in her friend, but it is not shown in what respects or on what matters. When Mrs. Heintzelman needed medical attention, Mrs. Norton made arrangements for her to go to the Norton family doctor.

In addition to the home in which she lived, Mrs. Heintzelman owned a farm nearby of approximately 120 acres. She maintained a vegetable garden there and also a flower garden. At various times respondents also had a garden there. Mrs. Heintzelman leased portions of the farm,

and in the negotiations for the yearly leases, which she personally handled, she insisted that they contain provisions that the lessee mow the weeds, repair fences, and plant no corn. The farm had a house on it which Mrs. Heintzelman rented.

In January 1964, Mrs. Heintzelman received a notice of a special sewer tax assessment against the farm. She and Mrs. Norton went to the office of the city engineer, and Mrs. Heintzelman was advised that the assessment of $890 was for only a few acres of the land, and that the total assessment would be substantially greater. Prior to this time Mrs. Heintzelman had told Mrs. Norton that she had executed a will, and that she had provided therein that respondents were to receive her farm. After she learned of the tax assessment on the farm, Mrs. Heintzelman offered to give respondents the farm, but they refused. They did agree to pay her what she had paid for the land, $8,500, plus the sewer tax assessment. While respondents were familiar with the land, they did not know its actual value, but Mrs. Norton admitted that Mrs. Heintzelman told them it was worth more than what she was selling it for to them.

After deciding to purchase the farm, respondents arranged for an attorney to handle the transaction. The deed was recorded six days after it was executed. Respondents made a down payment and gave a promissory note for the balance, which was paid off about a year later. The following year Mrs. Heintzelman learned that a gift tax return would have to be filed, and for that purpose the property was appraised at $400 an acre. The gift tax amounted to $327, and respondents paid this amount to Mrs. Heintzelman.

After the transfer of the farm in February 1964, Mrs. Heintzelman never requested that it be returned to her, and she at no time expressed any dissatisfaction with the transaction. After the transfer she and the respondents frequently went to the farm together, and according to the tenants of the house, "nothing had changed,"

except they paid the rent to respondents. Following the transfer, Mrs. Heintzelman made statements to others to the effect that she was glad that the respondents had the farm, and that she was relieved to be free of its responsibilities. She also stated to one of the witnesses, "why couldn't I have given them the farm, it was mine to give?"

Dr. Mervin Rumold had treated Mrs. Heintzelman since March 1962. At that time she had high blood pressure but responded to treatment. From March 1962 until January 1970 he saw Mrs. Heintzelman forty times. On February 14, 1964, Dr. Rumold made the following notation on his record: "Patient has never looked better, Patient is eighty years old and her mind is clear as a bell." On March 25, 1964, he made a notation that her blood pressure was 140 and that her "mind is clear." It was in December of 1964 that the doctor first noticed symptoms of arteriosclerosis. Her condition gradually became worse, and in May 1969, he made a notation of mental deterioration. It was Dr. Rumold's opinion that Mrs. Heintzelman was mentally competent in 1964. No witness testified to any evidence of lack of mentality prior to or at the time of the execution of the deed.

In this equity case we must determine the cause *de novo*, weigh the competent evidence introduced upon the factual issues, and reach our own conclusions based on the evidence, although we defer to the finding of the trial court where there is conflicting oral testimony involving a determination of the credibility of witnesses. Jackson v. Tibbling, 310 S.W. 2d 909 (Mo.1958). We also must keep in mind that the cancellation of a deed is the exercise of the most extraordinary power of a court of equity, and this power ought not to be exercised except when clearly justified by a consideration of all the evidence and circumstances in the case. Walton v. Van Camp, 283 S.W.2d 493 (Mo. 1955). As previously noted, the trial court refused to cancel the deed. A respondent

does not have the burden on appeal to establish the correctness of a judgment, Lakin v. Postal Life & Casualty Insurance Co., a corp., 316 S.W.2d 542 (Mo.1958), and an appellate court is not to reverse a judgment unless it is clearly erroneous. Mitchell v. Robinson, 360 S.W.2d 673 (Mo.1958).

Appellant asserts that a deed "from an eighty-year-old grantor, of questionable mentality, conveying for $8,500 land worth over $200,000 [appellant's evidence as to value] to respondents who were unrelated next door neighbors who occupied confidential relationship to grantor, should be set aside by reason of undue influence and the parties restored to their status prior to conveyance." In subpoints appellant asserts that a confidential relationship existed between Mrs. Heintzelman and the respondents, that Mrs. Heintzelman "did not possess the mental or physical capacity to engage in a business transaction," and respondents had the burden to sustain the transaction as fair and equitable.

■ We do not agree that Mrs. Heintzelman was of questionable mentality at the time of the execution of the deed. It is true that she was eighty years of age in 1964. However, at that time she was active, mentally alert, lived alone, managed her house and property, wrote her own checks, and conducted her personal affairs. It may well be that she discussed her affairs with her closest friends, the respondents, but there is nothing to indicate that they exercised any undue control over her, or that she left decisions up to them, or was not capable of making rational decisions. Dr. Rumold was so impressed by her condition that he noted that her mind was as "clear as a bell." We find nothing in the evidence, and no circumstance, indicating that at the time the deed was executed, Mrs. Heintzelman was of questionable mentality. However, assuming the record shows some "question," which in our opinion it does not, "mental weakness is not enough to justify setting aside a deed, but the proof must clearly show that the grantor did not possess sufficient mind to understand, in a reasonable manner, the nature and effects of his acts." Walton v. Van Camp, 283 S.W.2d 493 (Mo.1955). The record is totally void of any evidence to meet this standard.

Neither do we agree that the deed was obtained by undue influence on the part of respondents. In making this contention appellant asserts, first, that a confidential relationship existed between Mrs. Heintzelman and respondents, and second, "Upon proof of a confidential relationship, respondents had the burden of proof of sustaining the transfer to them as fair and equitable, and failed therein." The claim of a confidential relationship and the claim of undue influence are so closely related factually in this case that we shall consider them together.

■ It would not be realistic, and the courts therefore have not attempted, to precisely define and delimit the situations which give rise to a confidential relationship. But, generally speaking there must exist " 'a special trust and reliance which involves some fiduciary obligation on the part of the person so trusted, although it need not be a strictly technical fiduciary relationship.' " Schnurbusch v. Bohnert, 395 S.W.2d 460 (Mo. banc 1965). In this case, it is true that Mrs. Heintzelman had a strong personal affection for respondents. She expressed that feeling of affection both before and after the execution of the deed. Respondents were close neighbors who helped her, who looked after her needs, and gave her the companionship she obviously missed and needed after the death of her husband. Appellant does not dispute that Mrs. Heintzelman had provided in her will that the property in question was to go to respondents at her death, and as guardian of her estate he had possession of the will, or access to it, if it existed, which he also does not deny. Mrs. Heintzelman had no close relatives, and such distant relatives she had never concerned themselves about her. Because of

their closeness it is reasonable and to be expected that Mrs. Norton would have some knowledge of Mrs. Heintzelman's financial affairs, a matter upon which appellant places great stress, but there is nothing to indicate that in 1964, or prior thereto, that either respondent handled any of her financial affairs, or that she relied on them to make decisions for her, and certainly, neither respondent had any dealings involving trust or confidence concerning the property transferred by the deed.

We agree with the statement in Flynn v. Union National Bank of Springfield, 378 S.W.2d 1 (Mo.App.1964), which we shall quote because it is so applicable and appropriate to the facts of this case.

■ "It is fairly well settled that a trust, strong affection, or a good feeling which one ordinarily reposes in a close, personal friend or relative, or in gratitude for the kind acts of a good neighbor, is not ordinarily the confidential relationship with which we are dealing. We find nothing in the relationship between [the donor and the donee], prior to the transaction, which speaks any more than kind acts, friendly attention, and good neighborliness. In almost every neighborhood there is a good neighbor who lends his or her assistance to those who are beset and in trouble. If we are to say that these simple acts of neighborly kindness and friendship are to be damned with suspicion created by a presumption of undue influence, then we are indeed living in a harsh society."

■ Upon our consideration of the evidence and all the circumstances in this case we conclude, as did the trial court, that respondents were not guilty of the exercise of undue influence in the procurement of the deed. This makes it unnecessary to consider the contention of appellant concerning the "burden of proof" when a confidential relationship is established. It is sufficient to say that appellant has confused "burden of proof" with the "burden of evidence." See Been v. Jolly, 247 S.W.

2d 840 (Mo.1952); Walton v. Van Camp, supra.

Appellant asserts that the trial court "committed prejudicial error in permitting respondents to testify as to transactions" with Mrs. Heintzelman, and that the court "committed clear reversible error in the admission of hearsay testimony" by Mr. Norton. In making these assertions appellant misconstrues the function of this court in its review of an equity case.

■ As previously stated, we review the case upon both the law and evidence, and the judgment shall not be set aside unless clearly erroneous. In making such *de novo* review this court will not consider any inadmissible evidence heard by the trial court, Bowman v. Kansas City, 233 S.W.2d 26 (Mo.1950), and it will consider, when presented by an offer of proof, excluded admissible evidence. St. Louis Southwestern Railway Co. v. Meyer, 364 Mo. 1057, 272 S.W.2d 249 (1954). "Prejudicial error" or "reversible error" in the admission or rejection of evidence is not an issue on an appeal in an equity case. The issue is whether the evidence should have been admitted and considered, or rejected and not considered, and when that issue is determined the next issue is what the judgment of the court should be, based upon a consideration of the competent and admissible evidence.

■ However, the testimony of respondents was not erroneously admitted for the reason assigned by appellant. Assuming that § 491.010, RSMo 1969, V.A.M.S. (the Dead Man's Statute) would otherwise apply because Mrs. Heintzelman had been declared incompetent by the probate court, but see Beil v. Gaertner, 355 Mo. 617, 197 S.W.2d 611 (1946), appellant waived the application of that statute. Plaintiff's entire case, other than evidence as to value of the land and proof that appellant could repay to respondents $8,500, consisted of statements of Mrs. Norton made in her testimony before the probate court at the incompetency hearing which

were read to the court on the theory they constituted declarations against interest. This constituted a waiver of the application of the Dead Man's Statute, if otherwise applicable, not only as to her, Prentzler v. Schneider, 411 S.W.2d 135 (Mo. 1966), but also as to Mr. Norton. Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31 (1952). See also the annotation at 33 A.L.R.2d 1433.

In our determination of this case we have given no consideration to the testimony of Mr. Norton claimed by appellants to have constituted hearsay, and therefore it is unnecessary to rule that issue.

Based upon our review of the evidence, and upon our consideration of all the attending circumstances concerning the execution and delivery by Mrs. Heintzelman of the deed to respondents, we are constrained to conclude, as did the trial court, that appellant has failed to sustain his burden of proof by clear, cogent and convincing evidence authorizing the exercise of the extraordinary power of a court of equity to cancel the deed.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

HENLEY, P. J., DONNELLY, C. J., and MEYER, Special Judge, concur.

MORGAN , J., not sitting.

FINCH, J., not a member of Division when cause was submitted.