**BE–MAC TRANSPORT COMPANY, INC., Appellant,**

v.

**STATE TAX COMMISSION OF MISSOURI, et al., Respondents.**

No. 68457.

Supreme Court of Missouri, En Banc.

March 17, 1987.

Mary K. Fitzgerald, Harvey G. Schneider, St. Louis, for appellant.

Patricia Rogers, Asst. City Counselor, James J. Wilson, City Counselor, Edward J. Hanlon, Assoc. City Counselor, Jennifer H. Fisher, Asst. City Counselor, St. Louis, for respondents.

DONNELLY, Judge.

This appeal poses the following: Are the trucks and trailers of a transport company "based" in a particular county for assessment purposes under section 137.095, RSMo 1978, if the company headquarters and largest terminal are located in that county, if all fiduciary and administrative functions regarding the property are conducted there, if all business documents necessary for operation are to be found there, and if all equipment of the corporation is inventoried at that location?

Be-Mac Transport Company, a Missouri corporation, is an interstate and intrastate Class I General Commodities Carrier, subject to regulation under Chapter 390, RSMo 1986. It operates from a network of fifteen terminals and offices located in Illinois, Indiana, Kansas, Michigan, Missouri, Oklahoma, and Texas. The company's headquarters are in St. Louis.

At issue is appellant's "rolling stock" for the tax year 1983, consisting of seventy-six tractors and three hundred four trailers of various lengths. Each was registered and licensed under the International Registration Plan;[1] for the tax year 1983, Missouri was the state of registration. All registration documents were processed through and maintained at company headquarters.

Appellant's rolling stock has no "home" location where it always may be found. Each unit is sent from terminal to terminal as it becomes available for shipments. Hauling runs are dispatched by phone from, to, and among the various local terminals, rather than a single central location. Schedule conflicts also are handled by the local terminals. Maintenance

---

1. *See, e.g.,* §§ 301.271–.279, RSMo 1978; 12 CSR § 20–3.010 (1977) (authorizing participation in such programs); *see also* 49 CFR § 1023.106 (1985). The International Registration Plan enables an owner of rolling stock to register all its vehicles in a single participating state; whether to register in any particular member state is a matter of owner discretion. The registration state issues plates which authorize operation of the stock in all participating states. Revenues derived from the licensing process are apportioned among member states according to the number of miles traveled by the subject stock in each state.

checks and general servicing of the stock are conducted wherever a particular unit happens to be located when maintenance is scheduled or servicing is required.

Be-Mac has three terminals in Missouri, located in St. Louis, Springfield and Kansas City. The terminal and service facility in St. Louis is rivaled in size only by Be-Mac's Chicago facilities. All necessary business documents, tax returns and tax reports are kept in St. Louis.

The Assessor for the City of St. Louis valued appellant's rolling stock at $741,980 in 1983. The City's Board of Equalization reduced this assessment to $654,760 on appeal. Upon paying the taxes and interest due on assessment under protest, § 139.-031, RSMo Cum. Supp. 1984, Be-Mac again appealed without success to the State Tax Commission. Finding St. Louis to be appellant's "base" for property tax purposes because the subject property was "otherwise controlled" there, the Commission held St. Louis the appropriate assessment jurisdiction,[2] further reducing the amount of assessment to $336,680. The circuit court affirmed. This Court has jurisdiction under Mo. Const. art. V, § 3 (1945).

Appellant does not argue that Missouri has no constitutional authority to levy a property tax on the rolling stock.[3] Instead, Be-Mac questions whether the legislature actually extended its power to tax to appellant's operations.

The pertinent statute directs:

1. The real and tangible personal property of all corporations operating in any county in the state ... and subject to assessment by county or township assessors, shall be assessed and taxed in the county in which the property is situated ... except that all motor vehicles which are the property of the corporation and which are subject to regulation under chapter 390, RSMo, shall be assessed for tax purposes in the county in which the motor vehicles are based.

2. For the purposes of subsection 1 of this section, the term *"based"* means the place where the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled. § 137.095, RSMo 1978. Be-Mac urges that theirs is not property "subject to assessment" in St. Louis because it is not "most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled" there. These terms, appellant maintains, suggest frequent *physical* contact between the property at issue and a single central location. Thus, Be-Mac claims it possesses no "base" in Missouri, since its rolling stock never is most frequently present at Missouri terminals for any of these purposes.

"All provisions of a statute must be harmonized and every word, clause, sentence and section thereof must be given some meaning," since the legislature should not be attributed with a meaningless act. *Staley v. Missouri Director of Revenue*, 623 S.W.2d 246, 250 (Mo. banc 1981). Where words of general meaning follow words susceptible of more precise definition, the general should be construed in a manner consistent with and similar to the specific. *Pollard v. Board of Police Comm'rs*, 665 S.W.2d 333, 341 n. 12 (Mo. banc 1984). We must look to the terms of the statute to determine the appropriate and intended scope of the phrase "or otherwise controlled."

As ordinarily understood, to garage, service, maintain or operate a vehicle necessitates the physical contact that appellant suggests. Such operations could not be performed without the vehicle's presence. But, to "dispatch" a vehicle, frequent physical presence is not required. Telephone and radio communication make it possible for the point of dispatch and points of vehicle origin and destination to be quite distinct. "Frequent dispatch," therefore, is

---

**2.** The City of St. Louis is considered a distinct county unit as well as a municipality. Mo. Const. art. VI, § 31 (1945).

**3.** This would be obvious error, since Missouri has the power to collect its share of revenues from interstate commerce through proper apportionment. *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949).

not of necessity related to "frequent physical presence."

This Court held, in *Buchanan County v. State Tax Comm'n,* 407 S.W.2d 910 (Mo. 1966), that "situated," as used in section 137.095.1, refers to the "place where the personal property is regularly kept ... with a more or less permanent situs." *Id.* at 914 (citations omitted). In 1965, the legislature amended the statute to include the "base" language as it now appears. 1965 Mo. Laws 257–58 (S.C.S.H.B. 206). The obvious purpose of this amendment was to account for the mobility of vehicles used in commercial enterprises.

We believe the interpretation of section 137.095.2 which appellant urges is more limited than the legislature intended. This offered construction in fact more closely approximates "where the vehicle is regularly kept" than "where the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled." The former suggests greater permanence, as explained in *Buchanan County.* In its desire to account for the greater transience of commercial vehicles, we believe the legislature intended a broader scope of application than appellant maintains.

We, therefore, hold the "otherwise controlled" language of section 137.095.2 authorizes assessment of appellant's rolling stock in the City of St. Louis. Dispositive is the fact that Be-Mac's corporate headquarters, the "nerve center" of the enterprise, is located there.[4] Although each terminal is authorized independently to initiate shipments, the St. Louis office is where functions essential to operate the trucks and trailers are coordinated. But for this central management and control, whereby compliance with the tax, registration and licensing laws of the various operating jurisdictions is secured, appellant's operation would be significantly less organized. Organization is fundamental to effective control.[5]

No evidence presented for Commission consideration suggested appellant had acquired a taxable situs in any other county; on the other hand, competent and substantial evidence supported the Commission's finding that the City of St. Louis was the proper assessment jurisdiction. *Compare Greyhound Lines, Inc. v. State Tax Comm'n,* 441 S.W.2d 699 (Mo.1969) (no evidence considered reference where subject property was "based", county assessment improper).

The judgment is affirmed.

HIGGINS, C.J., and BILLINGS, BLACKMAR, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., dissents.

---

4. We note that the result may have been different if Be-Mac's home offices were located elsewhere than in Missouri. Whether our decision pinpoints the outer limits of § 137.095 we reserve for another day.

5. Of less significance is the fact the St. Louis terminal is the largest of those Be-Mac operates in Missouri. Although one might infer that Be-Mac's stock was most frequently garaged, serviced and maintained at that terminal as opposed to the Springfield and Kansas City facilities, no findings to this effect were made by the Commission.