**Virginia L. SCHMIDLEUTNER, Guardian of the Estate of Irene A. Kellman, Incompetent, Appellant,**

v.

**Wayne B. RIEGEL and Jerean E. Riegel, his wife, Respondents.**

**No. 52106.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 20, 1987.

Rehearing Denied Dec. 2, 1987.

Gregory D. O'Shea, St. Louis, for appellant.

John Robert O'Connor, Kimme, Lamke & O'Connor, Washington, for respondents.

CRIST, Judge.

Virginia L. Schmidleutner, Guardian of Estate of Irene A. Kellman, Incompetent, appeals from the denial of her suit to set aside a deed of conveyance on the grounds of mental incompetency and undue influence. The deed, executed April 13, 1983, conveyed Mrs. Kellman's home to her neighbors, Wayne and Jerean Riegel. We affirm.

Mrs. Kellman was married for over fifty years, and her husband died in 1976. They had no children. Virginia Schmidleutner, Irene Kellman's niece, lives in St. Louis, Missouri, as do Mrs. Kellman's other relatives. Mrs. Kellman resides in Washington, Missouri, and with the possible exception of Mrs. Schmidleutner, Mrs. Kellman has minimal contacts with her relatives.

Mr. and Mrs. Kellman first met the defendants, Mr. and Mrs. Riegel, in 1972. In 1973, the Riegels purchased the property adjacent to the Kellman's home from the Kellmans, and at that time they were also granted a "right to bid on the property adjoining the property being transferred." It is this adjoining property that is in issue

in this case. The Riegels built a house on their property in 1977 and have been neighbors of Mrs. Kellman ever since.

In February of 1983, Mrs. Kellman transferred to her niece, Virginia Schmidleutner, a joint interest in a savings account and a certificate of deposit totaling more than $31,000. On March 21, 1983, Mrs. Kellman executed a codicil to her will which, among other things, acknowledged the rights of the Riegels in the real property in question. The Riegels were not beneficiaries under the will.

On April 11, 1983, Mrs. Kellman was treated at the emergency room at St. John's Mercy Hospital because of a fainting spell. She was released into the custody of Mr. and Mrs. Riegel and another neighbor, Irene Voss. Her condition on release was listed as "good, alert."

On April 13, 1983, Mrs. Kellman was examined by Dr. Dilip Banerjee, M.D. Dr. Banerjee conducted a neurological examination of Mrs. Kellman in which he found her "stable both mentally and physically."

Also on April 13, Mrs. Kellman and the Riegels kept an appointment with Sidney A. Thayer, an attorney the Riegels were acquainted with. On that date, Mrs. Kellman executed the deed in question conveying a life estate to herself and the remainder to the Riegels.

On May 10, 1983, Dr. Bruce Crane, M.D., conducted a psychiatric examination on Mrs. Kellman and diagnosed her as suffering from senile dementia, a disease evidenced by progressive mental deterioration. He stated in his deposition that Mrs. Kellman was confused and had no idea as to the value of her property. Dr. Crane also stated that an individual suffering from senile dementia could have periods of lucidity.

On August 2, 1983, Mrs. Kellman was adjudged incompetent. At her deposition on March 29, 1984, Mrs. Kellman estimated her assets to be valued at $300,000 and identified her heirs at law. This was within 10 percent of the true value of her property.

In a case tried without a jury, the judgment is affirmed unless it is not supported by substantial evidence, is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. Rule 73.01; *Wingate v. Griffin*, 610 S.W.2d 417, 418[1] (Mo.App.1980). The judgment of the trial court is presumed correct, and we must defer to the trial court's finding of credibility. *Sulltrop v. Sulltrop*, 655 S.W.2d 850, 851[1] (Mo.App. 1983).

Plaintiff asserts there was overwhelming evidence to set aside the deed both on grounds of diminished mental capacity and undue influence. "The cancellation of a deed is an extraordinary proceeding in equity and in order to justify such cancellation, the evidence in support thereof must be clear, cogent, and convincing." *Wingate*, 610 S.W.2d at 419[6].

Regarding plaintiff's claim of mental incompetency, it is a well settled principle that mental weakness alone is not sufficient to set aside a deed. The proponent must prove "the grantor did not possess sufficient mind to understand, in a reasonable manner, the nature and effects of his acts." *Martin v. Norton*, 497 S.W.2d 164, 168[6] (Mo.1973); *Wingate*, 610 S.W.2d at 420. The burden was on plaintiff to prove Mrs. Kellman was incompetent on April 13, 1983, the date of execution of the deed. *See Cruwell v. Vaughn*, 353 S.W.2d 616, 625[4] (Mo.1962).

■ There was an abundance of evidence produced at trial on the issue of Mrs. Kellman's competence. The attorney who drafted Mrs. Kellman's will stated in January of 1983 he and Joanne Hahne, Mrs. Kellman's accountant, found uncashed checks totaling over $50,000 at Mrs. Kellman's home. Dr. Crane testified Mrs. Kellman suffered from senile dementia; however, he admitted she could have lucid intervals. Plaintiff and several of Mrs. Kellman's neighbors and past acquaintances testified about specific instances when Mrs. Kellman displayed symptoms of confusion. None of plaintiff's witnesses remembered seeing her on April 13, 1983, and some had not seen her for some time prior to that.

There was evidence that Mrs. Kellman had not required a housekeeper to help take care of her until February 1984, and the housekeeper did not work full-time for Mrs. Kellman until May or June of 1984. The doctor who treated her on April 13, 1983, found Mrs. Kellman to be both mentally and physically alert.

In his deposition Mr. Thayer, the lawyer who prepared the deed, stated that Mrs. Kellman indicated she wanted to convey the property to the Riegels. Mr. Thayer questioned her at some length and was satisfied she understood the nature and consequences of the conveyance and that she independently decided to engage in the conveyance. Mrs. Kellman identified her relatives in St. Louis, but stated the Riegels were the ones who had been looking out for her and she wanted them to have the house. Mr. Thayer drafted the instrument; Mrs. Kellman signed it; and Mr. Thayer authenticated it by his acknowledgment as a notary public.

Mrs. Kellman, in a deposition taken in March of 1984, estimated her property to be valued at $300,000. This was within 10 percent of its true value. For all of these reasons, we find the judgment of the trial court that Mrs. Kellman was mentally competent on the date the deed was executed was not against the weight of the evidence.

There was little evidence adduced at trial regarding plaintiff's assertion of undue influence. Plaintiff claims the evidence shows defendants were in a position of trust and confidence, raising a presumption of undue influence which they failed to rebut. The trial court found no evidence of either undue influence or a confidential relationship between defendants and Irene Kellman. That finding was supported by the evidence.

In order to establish a confidential relationship, the proponent must show "a special trust and reliance which involves some fiduciary obligation on the part of the person so trusted...." *Martin*, 497 S.W.2d at 168[7].

The facts of this case are similar to the facts of *Martin*. In that case the guardian of an incompetent sought to set aside a deed from an eighty-year-old grantor, who was later adjudged incompetent, in favor of her neighbors. The Missouri Supreme Court held in refusing to set aside the deed: "It is fairly well settled that a trust, strong affection, or a good feeling which one ordinarily reposes in a close, personal friend or relative, or in gratitude for the kind acts of a good neighbor, is not ordinarily the confidential relationship with which we are dealing." *Martin*, 497 S.W.2d at 169. The court went on to hold there was no undue influence in the procurement of the deed.

■ In the case at hand, there was evidence of the establishment of a joint bank account in the names of Mrs. Kellman and Mrs. Riegel. However, Mrs. Riegel testified that having her name on the account was a mistake and she called the bank to have her name removed. There is contrary evidence that Mrs. Schmidleutner had defendant's name removed from the account; however, "[i]nsofar as testimony is inconsistent, we accord deference not only to the trial court's finding depending on credibility but also to that court's conclusions." *Daniels v. Champion*, 592 S.W.2d 869 (Mo.App.1979). There was no evidence that Mrs. Riegel used this account other than to write an entry of deposit for Mrs. Kellman. The evidence supports the court's finding of no confidential relationship between Mrs. Kellman and the defendants.

■ Because no confidential relationship existed, the burden remained on plaintiff to show the deed was the result of undue influence. The degree of influence necessary to set aside a deed is "influence which by force, coercion or overpersuasion destroys the free agency of the grantor." *Wingate*, 610 S.W.2d at 419–20. Plaintiff produced no evidence of this type of behavior by the defendants. Mrs. Riegel testified Mrs. Kellman told her: "I want to give you this home. I have taken care of everybody else and I want to take care of you...." The court's finding of no undue influence is not against the weight of the evidence. The evidence supports a finding

that grantor freely executed the deed in question.

Judgment affirmed.

GARY M. GAERTNER, P.J., and DOWD, J., concur.