**BEELMAN TRUCK COMPANY,**
Appellant,

v.

**STE. GENEVIEVE COUNTY BOARD OF EQUALIZATION, Respondent.**

No. 74997.

Supreme Court of Missouri,
En Banc.

Aug. 17, 1993.

As Modified on Denial of Rehearing
Sept. 23, 1993.

J. Kent Lowry, Mary D. Winter, Jefferson City, for appellant.

Terry R. Rottler, Ste. Genevieve, for respondent.

THOMAS, Judge.

This is an appeal from a de novo trial in the Circuit Court of Ste. Genevieve County concerning personal property taxes on tractor trucks and trailers assessed against Beelman Truck Company by the Ste. Genevieve County Assessor for the tax year 1991. Jurisdiction for this appeal is in this Court because it involves the construction of the revenue laws of this state.

Beelman Truck Company is a Delaware corporation that has its principal place of business in St. Libory, Illinois. It is a contract motor carrier that operates trucks in interstate commerce in approximately thirty-five states, including Missouri. The company's headquarters are located at its terminal in St. Libory, Illinois; the company has two other terminals in Illinois, one in Indiana and one in Ste. Genevieve, Missouri. Each of the terminals supplies maintenance for the trucks as needed, as well as parking and fueling facilities. The central dispatch location is at the terminal in Madison, Illinois; the Ste. Genevieve terminal does no dispatching. The trucks are licensed in Illinois under the International Registration Program. Under this program, the cost of licensing and motor vehicle fuel taxes are apportioned among the states in which Beelman operates on the basis of the number of miles travelled in each state.

With the exception of two pickups, operated exclusively in Ste. Genevieve County in connection with the operation of the terminal there, all the other trucks of Beelman are used in interstate commerce. Miles driven in the various states are reported and, with that as a basis, licenses and fuel taxes are apportioned among various states. In 1989, Beelman trucks drove a total of 14,092,354 miles. Four million of those miles were travelled in Missouri. Compare this with 7.2 million miles driven in Illinois and 750,000 miles driven in Indiana.

Beelman pays a replacement tax in Illinois on all the trucks in the interstate fleet; this tax is based on revenue and replaces the Illinois personal property tax. Beelman also pays personal property tax in Kentucky and Canada; it has not paid any personal property tax in Missouri on any of the trucks involved in interstate travel.

■■■ On January 1, 1990, the Ste. Genevieve County Assessor went to the Beelman terminal and counted fifty-four road tractors located there; he also travelled to the St. Libory, Illinois, terminal where he observed seven trucks. However, all of this is irrelevant because taxation of vehicles or other rolling stock used in interstate commerce does not depend upon where it is located on January 1 of the taxing year. Such property will be taxed where it has a tax situs; i.e., any state in which it is afforded the opportu-

nities, benefits and protections of the taxing state and in which it was habitually and continuously used during the year (required by the Due Process Clause of the federal constitution). *Johnson Oil Refining Co. v. Oklahoma*, 290 U.S. 158, 162, 54 S.Ct. 152, 154, 78 L.Ed. 238 (1933); *Braniff Airways, Inc. v. Nebraska State Bd. of Equalization and Assessment*, 347 U.S. 590, 600–01, 74 S.Ct. 757, 763–64, 98 L.Ed. 967 (1954); *Central R.R. Co. v. Pennsylvania*, 370 U.S. 607, 613, 82 S.Ct. 1297, 1302, 8 L.Ed.2d 720 (1962); *Bi Go Markets, Inc. v. Morton*, 843 S.W.2d 916, 918 (Mo. banc 1992). Such interstate commerce property may have a tax situs in more than one state. Each state in which it has a tax situs is allowed to tax the property so long as it does so on a reasonably apportioned basis (required by the Interstate Commerce Clause). *Braniff Airways*, 347 U.S. at 598, 74 S.Ct. at 762; *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 287, 97 S.Ct. 1076, 1079, 1083, 51 L.Ed.2d 326 (1977); *Standard Oil Co. v. Peck*, 342 U.S. 382, 384, 72 S.Ct. 309, 310, 96 L.Ed. 427 (1952); *Quill Corp. v. North Dakota*, — U.S. —, —, 112 S.Ct. 1904, 1912, 119 L.Ed.2d 91 (1992); *Central R.R.*, 370 U.S. at 612, 82 S.Ct. at 1301; *Bi Go Markets*, 843 S.W.2d at 917–18.

In this instance, the due process requirements were met because Missouri afforded the use of the highways, police protection, and other governmental services related to the operation of the vehicles on Missouri highways. The Interstate Commerce Clause was not violated because the assessor used a proper method of apportioning the value of Beelman's interstate fleet properly taxed in Missouri. The assessor requested a listing from the Secretary of State of Illinois of all Beelman's vehicles listed as interstate vehicles. This listing consisted of 199 tractor trucks and 199 trailers, which included leased vehicles that under the Missouri statute may be taxed to either the lessor or the lessee. Section 137.075, RSMo 1986. *Bi Go Markets*, 843 S.W.2d at 921. The assessor determined the assessed valuation of the entire interstate fleet and the computed and assessed tax in Missouri based on 30.7%, which was the percentage of Missouri mileage included in the entire interstate mileage in all states in 1989 (i.e., 4,000,000 miles in Missouri out of a total of 14,092,354 miles travelled.)

Beelman concedes that this is an appropriate method of apportioning the Missouri tax based upon the mileage in Missouri if Missouri, in fact, purports to tax the maximum portion of such property allowed under accepted constitutional principles of due process and interstate commerce. But Beelman contends that section 137.095, RSMo 1986, which reads as follows, is controlling.

1. The real and tangible personal property of all corporations operating in any county in the state of Missouri ... shall be assessed and taxed in the county in which the property is situated on the first day of January ..., except that all motor vehicles which are the property of the corporation and which are subject to regulation under chapter 390, RSMo, shall be assessed for tax purposes in the county in which the motor vehicles are based.

2. For the purposes of subsection 1 of this section, the term "based" means the place where the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled.

Beelman argues that its interstate fleet is not based at the Ste. Genevieve terminal, the only terminal the company has in Missouri, and, therefore, Missouri does not purport to tax this fleet even though it is entitled to. We disagree. Section 137.095 deals with where corporate property shall be taxed. The fact that corporate property will be taxed is mandated by section 137.075, which provides: "Every person owning or holding ... tangible personal property on the first day of January, including all such property purchased on that day, shall be liable for taxes thereon during the same calendar year." We hold that the portion of section 137.095 that directs that motor vehicles owned by a corporation shall be assessed for tax purposes in the county in which the motor vehicles are based is designed to designate which county shall assess taxes on the motor vehicles owned by a corporation which has more than one potential taxing location in the state. If a corporation owns a motor

vehicle that has a tax situs within the state, the fact that it may be "based" outside the state or may not be based at any particular place will not be deemed to render the property nontaxable. Where the corporation has only one office within Missouri, as in the case of Beelman Truck Company, all motor vehicles owned by the company will be taxed in the county where that single facility is located.

■ The taxpayer relies on *Be–Mac Transport Co. v. State Tax Comm'n,* 725 S.W.2d 599 (Mo. banc 1987), in which a trucking company similar to Beelman had three terminals in Missouri, including its corporate headquarters in St. Louis. Be–Mac argued that its rolling stock was not "based" in any particular terminal either within or outside of Missouri, but its trucks simply went from terminal to terminal and received service and repairs as needed and were dispatched from wherever they happened to be. This Court held that even if Be–Mac's trucks were not "based" at any terminal, they could be taxed in St. Louis, the main office of the corporation from where the trucks were managed and controlled. The holding in *Be–Mac* is consistent with our holding in this case; corporate personal property with a tax situs in Missouri will not escape taxation in Missouri either because it does not have a base or because it is based outside of the state.

■ Beelman argues as a fall-back position that the assessor has failed to show the constitutional nexus for taxation in Missouri with respect to each truck constituting the interstate fleet. We reject this claim. The assessor based his assessment on a listing of all of the interstate vehicles that Beelman registered with the state of Illinois. In effect, the proration method used by the assessor treats all of the vehicles included within the interstate fleet as a single asset. The formula, which takes all Missouri mileage on all trucks as its numerator and all mileage on all trucks for the entire year as its denominator, automatically adjusts to reflect the extent to which the various vehicles in the fleet have been used in Missouri during the tax year. A proration formula of this type has been approved time and time again. *Pull-*

*man's Palace Car Co. v. Pennsylvania,* 141 U.S. 18, 26, 11 S.Ct. 876, 879, 35 L.Ed. 613 (1891); *Pittsburgh C., C. & St. L. Ry. Co. v. Backus,* 154 U.S. 421, 431, 14 S.Ct. 1114, 1118–19, 38 L.Ed. 1031 (1894); *Union Transit Co. v. Kentucky,* 199 U.S. 194, 206, 26 S.Ct. 36, 38, 50 L.Ed. 150 (1905); *Nashville, C. & St. L. Ry. v. Browning,* 310 U.S. 362, 365, 60 S.Ct. 968, 970, 84 L.Ed. 1254 (1940); *Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 297, 314–15, 64 S.Ct. 950, 953, 961, 88 L.Ed. 1283 (1944); *Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 174–75, 69 S.Ct. 432, 434–35, 93 L.Ed. 585 (1949); *Be–Mac,* 725 S.W.2d at 600.

Beelman claims that the very same formula used in this case was struck down as violating both the Due Process and the Commerce Clause of the United States Constitution in *Norfolk & W.R. Co. v. Tax Comm'n,* 390 U.S. 317, 325, 88 S.Ct. 995, 1001, 19 L.Ed.2d 1201 (1968). Beelman is mistaken; *Norfolk* did not involve the same formula. *Norfolk* involved the valuation of rolling stock of the railroad, and the formula was based upon the percentage of track in Missouri. The percentage of track does not necessarily reflect the amount of usage that the railroad would make of rolling stock in Missouri in a given year. In fact, in *Norfolk* in the year in which the formula based on miles of track in Missouri was first used, the value of the rolling stock was assessed at $19,981,757. This was practically the same rolling stock that had been assessed the previous year at $9,177,683. There was also evidence that, on the basis of actual count, the rolling stock actually employed in the state comprised only about 2.71% by number of units and only 3.16% by cost-less-depreciation value of the total fleet. However, under the formula, the rolling stock in Missouri constituted 8.28% of the total rolling stock.

*Norfolk* has been described as one of the rare cases in which "the Court has set aside assessments in flagrant cases of misattribution of the tax base." J. Hellerstein, 1 State Taxation: Corporate Income and Franchise Taxes § 11.05[2], p. 11–14 (2nd ed. 1993). As the cases in this area have developed, *Norfolk* has been generally limited to its facts. In *Moorman Mfg. Co. v. Bair,* 437 U.S. 267,

98 S.Ct. 2340, 57 L.Ed.2d 197 (1978), approving a single-factor formula for proration of state income tax in Iowa, the Court distinguished *Norfolk* by pointing out that the formula in *Norfolk* "led to a grossly distorted result." *Id.* at 274, 98 S.Ct. at 2345, *citing Norfolk,* 390 U.S. at 326, 88 S.Ct. at 1002. In the period since *Norfolk,* the Court has not hesitated to indicate its approval of mileage formulas for various taxes related to trucking operations. In *American Trucking Assns, Inc. v. Scheiner,* 483 U.S. 266, 297, 107 S.Ct. 2829, 2847, 97 L.Ed.2d 226 (1987), invalidating a Pennsylvania flat tax per axle on out-of-state trucks, the Court pointed with approval to the fact that Pennsylvania uses mileage figures to apportion motor carriers' registration fees, to collect fuel taxes from out-of-state trucks, to calculate axle tax rebates, and to apportion the corporate-income tax it imposes on interstate carriers. It is clear from *Norfolk* and the cases since *Norfolk,* that the Court's holding in that case does not jeopardize the mileage formula used by the assessor to assess the Beelman fleet.

We hold that the Ste. Genevieve County Assessor was correct in including in the assessment all of the vehicles used by Beelman in its interstate fleet and in applying the mileage formula to apportion between Missouri and the other states entitled to tax the property.

The judgment of the trial court is affirmed.

COVINGTON, C.J., and HOLSTEIN, BENTON and LIMBAUGH, JJ., concur.

PRICE, J., dissents in separate opinion filed.

ROBERTSON, J., concurs in opinion of PRICE, J.

PRICE, Judge.

The taxing statute in dispute is § 137.095, RSMo 1986, which reads as follows:

1. The real and tangible personal property of all corporations operating in any county in the state of Missouri ... shall be assessed and taxed in the county in which the property is situated on the first day of January ..., *except that all motor vehicles which are the property of the corporation and which are subject to regulation under chapter 390, RSMo, shall be assessed for tax purposes in the county in which the motor vehicles are based.*

2. For the purposes of subsection 1 of this section, the term "based" means the place where the vehicle is most frequently dispatched, garaged, serviced, maintained, operated or otherwise controlled.

(Emphasis added.)

The majority claims that section 137.095 only controls *where* corporate property is to be taxed, and that another section, 137.075, deals with *whether* corporate property will be taxed. Therefore, they continue, because Beelman's fleet is taxable under § 137.075, it cannot be excepted from taxation under § 137.095. They read the word "based" merely to designate which Missouri county assesses taxes upon vehicles owned by any entity engaged in interstate commerce that maintains a facility in Missouri. In short, the majority presumes as a matter of law that any Missouri facility is the base for interstate vehicles used in Missouri, regardless of whether this is so in fact. I disagree for three reasons.

First, I do not believe that *Be–Mac Transport Co. v. State Tax Comm'n,* 725 S.W.2d 599 (Mo. banc 1987), controls. In *Be–Mac,* the corporation's connections with St. Louis were substantially greater than the county connection in this case. There, the taxpayer's corporate headquarters and largest terminal were both in St. Louis. This Court held that, because the taxpayer's Missouri office was where "functions essential to operate the trucks and trailers [were] coordinated," the operation fell within the "otherwise controlled" language of the statutory definition of "based." *Id.* at 601.

However, the *Be–Mac* Court expressly stated that its decision might have differed if the corporation's home offices were not located within Missouri, and reserved for another day the issue of whether its decision represented the outer bounds of § 137.095. *Id.* at 601 n. 4. Although *Be–Mac* apparently anticipated this issue, it was not dispositive of it.

**562**

Second, I do not believe that § 137.075 requires us to read § 137.095 in a way to mandate taxation. While § 137.075 indeed provides for the taxation of tangible personal property, it does not preclude an exception granted by any other statute. If, by its own plain terms, § 137.095 provides such an exception, it should be given effect, regardless of § 137.075. *May Dept. Stores v. Koupal*, 835 S.W.2d 318 (Mo. banc 1992).

Third and most importantly, I believe that § 137.095 provides a special exception for the assessment, and thereby taxation, of motor vehicles used in interstate commerce but not based in Missouri. Section 137.095 clearly states that motor vehicles "shall be assessed for tax purposes in the county in which the motor vehicles are based." The direct implication of this section is that if a motor vehicle is not based in a Missouri county, it can be subject neither to assessment nor to taxation.

The majority presumes that a vehicle used in Missouri must also be based in Missouri. This presumption is not supported by the language of § 137.095 or the facts in this case. Had the legislature intended the interpretation advocated by the majority, it could have made the intention clear by specifying that vehicles "... shall be assessed for tax purposes in the *Missouri* county in which the motor vehicles are based" or that vehicles "... shall be assessed for tax purposes in the county in which *the taxpayer maintains a facility.*" The legislature did not, however, word the statute in either of these ways or in any other similar way to indicate a presumption that the vehicles would be taxed in a county other than where they are based.

We must assume the words chosen were the result of conscious deliberation and not mere accident and, thus, must defer to their plain meaning. We may not add words to a statute in hopes to conform it to what the legislature might have meant. Thus, I believe the plain language of § 137.095 determines not only where corporate property is taxed, but also whether motor vehicles are taxed. *Motor vehicles based outside of Missouri are exempted from tax by § 137.095.*

Beelman's fleet does not fall within the statutory definition of "based."[1] Additionally, neither the company headquarters nor the central dispatch location are in Missouri. While it is true that sufficient contacts with the state of Missouri existed to warrant taxation of Beelman's fleet, the plain language of the statute indicates a legislative intent to refrain from so doing.

Accordingly, I would reverse.

---

1. There is no contest over the two vehicles that are actually based in Ste. Genevieve County.