**TRI–STATE MOTOR TRANSIT CO., Plaintiff–Respondent,**

v.

**Stephen H. HOLT, Tax Collector for Jasper County, Missouri, Defendant–Appellant,**

**and**

**Cindy Troutman, City Collector for City of Duenweg, Missouri, Defendant.**

**Nos. 20500, 20501 and 20502.**

Missouri Court of Appeals, Southern District, Division Two.

May 7, 1996.

James R. Spradling, Carthage, for appellant.

D. Patrick Sweeney, Springfield and Deborah K. Dodge, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for respondent.

SHRUM, Chief Judge.

This consolidated appeal concerns three cases wherein Stephen H. Holt, tax collector for Jasper County (Collector), appeals from a judgment that ordered him to repay Tri–State Motor Transit Co. (Plaintiff) part of the personal property taxes paid by it under protest for 1992, 1993, and 1994.[1] The trial court entered the judgment alternatively, finding that Plaintiff was entitled to relief based on the protest statute, § 139.031, and

---

1. An additional party, Cindy Troutman, is a defendant in her capacity as tax collector for the city of Duenweg, Missouri. Without intending disrespect, we refer to her as Troutman. Troutman has not appealed from the portions of the judgment adverse to her.

also under the "illegal levy" provision, § 139.290.[2] We affirm.

No evidentiary hearing was conducted by the circuit court. The following is drawn from a joint stipulation of facts filed by the parties with the circuit court.

In 1992, 1993, and 1994, Plaintiff operated a tractor-truck and trailer fleet in interstate commerce and acquired tax situses in states other than Missouri. For each year in question, Plaintiff prepared and submitted to the Jasper County assessor a list of all equipment owned and leased by it. The assessor's office also had data from the Missouri Highway Reciprocity Commission from which it could and did determine the percentage of miles traveled annually by all of Plaintiff's vehicles attributable to Missouri, specifically, 6% in 1992, 6% in 1993, and 7.01% in 1994.

An order of the State Tax Commission, first promulgated in 1983 and in effect at all times pertinent here, declared that the State could not levy a property tax on the full value of vehicles that are engaged in interstate commerce and have acquired a tax situs in other states (citing *Ott v. Mississippi Valley Barge Line Co.*, 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949); *Standard Oil Co. v. Peck*, 342 U.S. 382, 72 S.Ct. 309, 96 L.Ed. 427 (1952)). The Commission further declared that a tax on the instrumentalities of interstate commerce may not be sustained unless the tax is fairly apportioned (citing *Maryland v. Louisiana*, 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981)). To meet the fair apportionment requirement for taxing instrumentalities of interstate commerce, the Commission recommended the use of this assessment formula:

True value of all trucks [and trailers] × % of miles of all trucks combined attributable to Missouri × 33⅓%

In the stipulation, Collector acknowledged that "[s]aid 1983 order is still valid and is controlling on all Assessed Valuations of in-

terstate trucks and trucking fleets and is to be followed by all county assessors."

The county assessor did not use the formula found in the Commission's order to compute Plaintiff's personal property taxes for the three years in question. Instead, he assigned a "minimum" assessed value to each of Plaintiff's interstate vehicles without applying the mileage ratio to those minimum values. Although the record is less than clear on the subject, apparently the assessor arrived at his minimum assessed value by assigning to each vehicle a "true" value as if it were a 1981 model (without regard to that vehicle's actual age and true value) and then multiplied the 1981 true value for that model truck or trailer by 33⅓rd percent. The resulting "minimum" assessed value did not take into account the percentage of miles attributable to Missouri nor did it assign a true value to the vehicle (unless it happened to be a 1981 model).

Whenever the assessor's "minimum" valuation method produced a higher valuation than did the recommended formula, the assessor assigned the higher figure as the assessed value on the particular vehicle. Consequently, for the years 1992, 1993, and 1994 combined, Collector collected $389,974 in personal property taxes from Plaintiff, whereas under the recommended formula, Plaintiff would have owed $136,272 in personal property taxes for the same period—a difference of $253,702.

Plaintiff timely paid the taxes in 1992, 1993, and 1994 to Collector and Troutman. Each payment was accompanied by a protest letter as required by § 139.031.1.[3] In the protest letters, Plaintiff charged that the valuation method used by Jasper County officials did not apportion taxes between Missouri and other states entitled to tax such property. In its 1994 protest letter, Plaintiff specifically complained that the lack of apportionment violated the Due Process and Commerce Clauses of the United States Con-

---

**2.** Statute references are to RSMo 1994 unless otherwise stated.

**3.** In pertinent part, § 139.031.1 provides:
"1. Any taxpayer may protest ... taxes assessed against him, except taxes collected by the director of revenue.... Any such taxpayer

desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based. The statement shall include the true value in money claimed by the taxpayer if disputed."

stitution. Each of Plaintiff's letters further advised Collector and Troutman that it intended to rely on both § 139.031 and § 139.290 to recover the disputed taxes.

Plaintiff then timely filed petitions in 1993, 1994, and 1995 in the circuit court seeking to recover the taxes it paid under protest. Counts I and II of each petition sought recovery from Collector of the portion of the disputed taxes paid to him.[4]

After the three cases were consolidated, Collector moved for dismissal of Plaintiff's petitions because Plaintiff did not first exhaust its administrative remedies for relief, i.e., by appealing first to the Board of Equalization, and then to the State Tax Commission. The court overruled Collector's motion to dismiss, saying:

> "With regard to Count[ ] I ... plaintiff is properly before this Court ... [as] plaintiff has complied with Section 139.031 ... [and] the issue disputed is purely constitutional....
>
> ....
>
> "With regard to Count[ ] II ... this Court as a matter of law, concludes plaintiff is properly before this Court pursuant to Section 139.290 RSMo. (1986). Section 139.290 RSMo. (1986), permits a taxpayer to bring a cause of action for the refund of money collected under an illegal levy as declared by the Supreme Court of the State of Missouri. As held in *Aackerman [sic] Buick, Inc. v. St. Louis County,* 771 S.W.2d 343 (Mo. banc 1989), it is not necessary for a plaintiff operating under this statute to have first complied with any of the requirements noted in Section 139.031 ... or to proceed administratively. As the statute requires, it is only necessary for the plaintiff to prove there has been an illegal levy and that the disputed monies be either in the county treasury or within the control of the county commission. Id.

at 345 fn. 4. In light of the decision of the Missouri Supreme Court in *Beelman Truck Co. v. Ste. Genevieve County,* 861 S.W.2d 557 (Mo. banc 1993), [Count] II [is] properly before this Court."

The circuit court concluded that Counts I and II were pled in the alternative, found "the issues in Counts I and II of the Consolidated Petition ... in favor of Plaintiff ... and against Collector ... [,]" and awarded Plaintiff damages of $253,702 and interest earned. This appeal by Collector followed.

Collector's first point on appeal maintains that the trial court erred when it overruled Collector's motion to dismiss because Plaintiff "failed to exhaust its administrative remedies in that it did not appeal its assessment to the Jasper County Board of Equalization and subsequently to the state tax commission prior to filing suit in the circuit court."

■ To support his argument, Collector cites *Stout Industries, Inc. v. Leachman,* 699 S.W.2d 129 (Mo.App.1985), *Connors v. Leachman,* 740 S.W.2d 376 (Mo.App.1987), and *Nexus Rent–A–Car, Inc. v. Nash,* 747 S.W.2d 683 (Mo.App.1988), cases where the taxpayers' suits to recover protested taxes were brought pursuant to § 139.031.[5] Those cases state the general rule that a taxpayer who utilizes the § 139.031 remedy to recover protested taxes must exhaust his administrative remedies, even at times when constitutional claims are raised. *See, e.g., Connors,* 740 S.W.2d at 378; *Stout,* 699 S.W.2d at 131[2]. Thus, "[i]f the taxpayer is challenging the statute as unconstitutional in its application or administration, administrative remedies must be exhausted." *Connors,* 740 S.W.2d at 378, n. 2 (citing *Stout,* 699 S.W.2d at 131). The exception occurs when the sole issue raised by the taxpayer is the constitutionality of a statute on its face; in that instance exhaustion of administrative reme-

---

4. Counts III and IV of each petition sought repayment from Troutman of the disputed taxes paid to her as collector for the city of Duenweg.

5. In part, § 139.031.2 reads:

"2. The collector shall disburse to the proper official all portions of taxes not disputed by the taxpayer and shall impound in a separate fund all portions of such taxes which are in

dispute. Except as provided in subsection 3 of this section, every taxpayer protesting the payment of taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court...."

dies is not required. *Connors,* 740 S.W.2d at 378[2]; *Stout,* 699 S.W.2d at 131[2].

■ Collector contends that "[t]his case was not a challenge to the constitutionality of the assessment but rather to its interpretation," and consequently Plaintiff was required to exhaust its administrative remedies before proceeding in circuit court. Since Plaintiff did not appeal to the board of equalization or the State Tax Commission, Collector insists the trial court committed reversible error in overruling his motion to dismiss Plaintiff's consolidated petition.

We need not, however, decide Collector's first point. Collector's argument addressing the exhaustion of remedy issue focuses exclusively on Plaintiff's first count (brought under § 139.031) and wholly ignores the trial court's decision that pursuant to *Ackerman Buick, Inc. v. St. Louis County,* 771 S.W.2d 343 (Mo. banc 1989), Plaintiff could proceed under Count II (§ 139.290) without pursuing administrative remedies.

*Ackerman* established that a taxpayer who seeks a refund of taxes paid under protest may have a remedy available under § 139.290 [6] separate and apart from § 139.031. *Id.* at 345–46. The elements of a § 139.290 action are explained in *Ackerman* thusly:

> "Section 139.290 ... requires: (1) that there be an illegal levy (as determined by the Missouri Supreme Court) and (2) that the disputed monies be either in the county treasury or within the control of the county commission before the county commission is authorized to refund the disputed monies."

*Id.* at 345, n. 4. Finally, *Ackerman* allows taxpayers who can show compliance with § 139.290 to proceed under that section without exhausting administrative remedies.

■ The absence of appellate argument on the § 139.290 issue suggests that Collector has conceded that the trial court was correct in its analysis of Count II. A question not presented in an appellant's brief

"'will be considered abandoned on appeal and no longer an issue in the case.'" *Tice v. Tice,* 872 S.W.2d 148, 149 (Mo.App.1994) (quoting *Pruellage v. De Seaton Corp.,* 380 S.W.2d 403, 405[3] (Mo.1964). Issues which could have been raised on appeal, but were not, are not considered. *Tice,* 872 S.W.2d at 149.[1]. We find this passage from *Barkley v. Carter County State Bank,* 791 S.W.2d 906 (Mo.App 1990) to be apropos:

> "'On appeal, a trial court judgment is presumed valid and the burden is appellants' to demonstrate incorrectness of the judgment.' *Delaney v. Gibson,* 639 S.W.2d 601, 604[4] (Mo. banc 1982). It is not proper for this court 'to become an advocate for the appellant and search for a basis to challenge' the trial court's findings. *Massman Construction Co. v. Kansas City,* 487 S.W.2d 470, 478[6] (Mo.1972). A respondent does not have the burden on appeal to establish the correctness of a judgment. *Martin v. Norton,* 497 S.W.2d 164, 168[3] (Mo.1973)."

*Id.* at 915.

In the instant case, the trial court adjudged a refund to Plaintiff of protested taxes under Count II as an alternative remedy to the relief sought by Plaintiff under Count I. By detailed findings, the trial court apprised Collector that it was entering a judgment for Plaintiff based on § 139.290. Moreover, in its findings, the trial court clearly stated its grounds for overruling Collector's motion to dismiss Count II, i.e., that because of *Ackerman* and *Beelman,* Plaintiff could proceed under § 139.290 without exhausting administrative remedies. On this appeal, Collector has failed to attack those grounds or that finding. That finding leaves those grounds as an independent basis for affirming the trial court's order overruling Collector's motion to dismiss for lack of jurisdiction. *Barkley,* 791 S.W.2d at 915 (quoting *City of Lee's Summit v. Browning,* 722 S.W.2d 114, 115[1] (Mo.App.1986)). *See also May Dept. Stores Co. v. County of St. Louis,* 607 S.W.2d 857, 868–69 (Mo.App.1980). Col-

---

6. In part, § 139.290 reads:
   "Wherever, in any county ... money has been collected under an *illegal levy,* the county commission ... is hereby authorized to refund the same ... provided ... that before any levy shall be considered illegal, it shall have been so declared by the supreme court of Missouri...." (emphasis ours).

lector has failed to show that the trial court erred when it overruled his motion to dismiss.

We turn now to Collector's second and final point, which we reproduce here: "The court erred in ruling that [Plaintiff] was entitled to a refund of assessed taxes because the Assessor of Jasper County, Missouri appropriately assessed [Plaintiff's] trucks and trailers which were ten years of age and older *without apportioning* the same in that [Plaintiff] may be required to pay personal property taxes on the minimum value of its trucks and trailers for the privilege of doing business in the state of Missouri and the receiving of substantial benefits and protection from it." (emphasis ours).

This point demonstrates Collector's mistaken interpretation of the controlling principle of law. Contrary to Collector's characterization, interstate commerce property may be taxed in each state in which it has a tax situs "so long as [the taxation is done] on a reasonably *apportioned* basis (required by the Interstate Commerce Clause)." *Beelman Truck Co. v. Ste. Genevieve County,* 861 S.W.2d 557, 559 (Mo. banc 1993) (citing several U.S. Supreme Court cases) (emphasis ours, parenthetical in original). Apportionment is necessary to satisfy the Commerce Clause, which requires that the taxing authority determine " 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' " *Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 174, 69 S.Ct. 432, 434, 93 L.Ed. 585 (1949) (quoting *Nashville, C. & St. L.R. v. Browning,* 310 U.S. 362, 365, 60 S.Ct. 968, 970, 84 L.Ed. 1254 (1940)).

It is undisputed that Plaintiff's fleet of trucks and tractors has engaged in interstate commerce and acquired tax situses in multiple states, including Missouri. Therefore, Collector's admission in his point relied on that the assessor did not apportion the assessment on Plaintiff's fleet is perplexing since it is fatal to his appeal of the circuit court's judgment. Even more perplexing is Collector's citation of several Missouri cases which make it clear that apportionment is mandatory when property is engaged in in-

terstate commerce. *See State ex rel. City of Cabool v. Texas County Bd. of Equalization,* 850 S.W.2d 102 (Mo. banc 1993); *Greyhound Lines, Inc. v. State Tax Commission,* 441 S.W.2d 699 (Mo.1969); *Bi Go Markets, Inc. v. Morton,* 843 S.W.2d 916 (Mo. banc 1992).

Without citing authority that supports his contention, Collector insists that the assessor "has developed a novel, but fair, method of allocating assessed values to [Plaintiff's] trucks and trailers" without apportionment. We disagree. As Judge Lamm observed in *Leavell v. Blades,* 237 Mo. 695, 700, 141 S.W. 893 (1911): "When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it." *Id.* 141 S.W. at 894. In this case, Collector has taken the former action while neglecting the latter. Collector's method may be novel, but without apportionment it cannot be fair.

The "minimum" assessed value assigned to Plaintiff's interstate fleet was not derived from any effort by the taxing authority to determine what portion of Plaintiff's interstate fleet might appropriately be attributed to Missouri. As a consequence, Collector levied and collected personal property taxes against Plaintiff without the "reasonably apportioned basis (required by the Interstate Commerce Clause)." *See Beelman,* 861 S.W.2d at 559. We conclude that the trial court did not err in ruling that Plaintiff was entitled to a refund of protested taxes in the amount of $253,702 for the years 1992 through 1994, plus the interest earned on the account. Point II is denied.

The judgment of the circuit court is affirmed.

CROW and PARRISH, JJ., concur.